1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   J & J SPORTS PRODUCTIONS, INC.,

11            Plaintiff,                    No. CIV S-11-0648 KJM CKD

12       v.

13
     JASON BROWN, et al.,                   FINDINGS & RECOMMENDATIONS
14
              Defendants.
15   _____/

16            Presently before the court is plaintiff's application for default judgment.  This

17   matter was submitted without oral argument.  The undersigned has fully considered the briefs

18   and record in this case and, for the reasons stated below, will recommend that plaintiff's

19   application for default judgment be granted.

20                              BACKGROUND

21            Plaintiff J&J Sports Productions, Inc. is a closed-circuit distributor of sports and

22   entertainment programming.  Defendants operate a bar called "American Spirit Bar" located on

23   Northgate Avenue in Sacramento, California.  Plaintiff purchased and retains the commercial

24   exhibition licensing rights to "'The Event':  The Manny Pacquiao v. Joshua Clottey WBO

25   Welterweight Championship Fight Program," which was broadcast on Saturday, March 13, 2010

26   /////

                                              1

1  ("The Program").  Defendants intercepted and exhibited the program in the commercial

2  establishment referred to above without authorization to do so.

3          The record reflects that defendants were properly served with process by

4  substituted service on June 6, 2011 and default was entered on July 15, 2011.  On August 10,

5  2011, plaintiff filed its motion for default judgment with a proof of service reflecting service of

6  the motion on defendants.

7                                    LEGAL STANDARDS

8          Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for

9  entry of default judgment.  Upon entry of default, the complaint's factual allegations regarding

10  liability are taken as true, while allegations regarding the amount of damages must be proven.

11  Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983)

12  (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th

13  Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc.

14  v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

15          Where damages are liquidated, i.e., capable of ascertainment from definite figures

16  contained in documentary evidence or in detailed affidavits, judgment by default may be entered

17  without a damages hearing.  Dundee, 722 F.2d at 1323.  Unliquidated and punitive damages,

18  however, require "proving up" at an evidentiary hearing or through other means.  Dundee, 722

19  F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

20          Granting or denying default judgment is within the court's sound discretion.

21  Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089,

22  1092 (9th Cir. 1980).  The court is free to consider a variety of factors in exercising its discretion.

23  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among the factors that may be

24  considered by the court are

25          (1) the possibility of prejudice to the plaintiff, (2) the merits of
            plaintiff's substantive claim, (3) the sufficiency of the complaint,
26          (4) the sum of money at stake in the action; (5) the possibility of a

1  dispute concerning material facts; (6) whether the default was due
2  to excusable neglect, and (7) the strong policy underlying the
   Federal Rules of Civil Procedure favoring decisions on the merits.

3  Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

4                                            ANALYSIS

5  I.  Whether Default Judgment Should Be Entered

6             The factual allegations of plaintiff's complaint, taken as true pursuant to the entry

7  of default against defendants, and the affidavits submitted in support of the motion for summary

8  judgment establish the following circumstances:  (1) defendants are the owners, operators,

9  licensees, permitees, persons in charge, or persons with control over the commercial

10  establishment at issue in this action; (2) plaintiff purchased and retains the commercial exhibition

11  licensing rights to the Program; (3) plaintiff entered into sublicensing agreements with various

12  commercial entities by which it granted those entities limited sublicensing rights to exhibit the

13  Program to their patrons within their establishments; (4) as a commercial distributor of sporting

14  events, plaintiff expended substantial monies marketing, advertising, promoting, administering,

15  and transmitting the program to its customers; (5) with full knowledge that the program was not

16  to be intercepted, received, and exhibited by unauthorized entities, defendants exhibited the

17  program and did so willfully and for purposes of commercial or private gain at both locations;

18  and (6) defendant violated either 47 U.S.C. § 553 or 47 U.S.C. § 605.

19             In the motion for default judgment, plaintiff seeks enhanced statutory damages for

20  willful violation of the Communications Act, 47 U.S.C. § 605.[1]  Under section 605, statutory

21  _____

22       [1]  In the complaint, plaintiff also seeks damages for willful violation of the Cable &
   Television Consumer Protection & Competition Act, 47 U.S.C. § 553.  Statutory damages are
23  allowed under section 553 of $250 to $10,000 or up to $50,000 for willful violations.  47 U.S.C.
   § 553(c)(3).  Damages may not be awarded under both section 605 and 553.  See J & J Sports
24  Productions, Inc. v. Manzano, NO. C 08-01872 RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept.
   29, 2008) ("A signal pirate violates section 553 if he intercepts a cable signal, he violates section
25  605 if he intercepts a satellite broadcast.  But he cannot violate both by a single act of
   interception."); see also J & J Sports Productions, Inc. v. Ro, No. C 09-02860 WHA, 2010 WL
26  668065, at *3 (N.D. Cal. Feb. 19, 2010); J & J Sports Productions, Inc. v. Prado, No. 2:07-cv-
   02104 GEB DAD, 2008 WL 822159, at *3 (E.D. Cal. Mar. 27, 2008); Kingvision Pay Per View,

1   damages may be awarded between $1,000 and $10,000 for violation of the Federal

2   Communications Act and up to $100,000 when the violation "was committed willfully and for

3   purposes of direct or indirect commercial advantage or financial gain."  47 U.S.C. §

4   605(e)(3)(C)(ii).  Because defendants have not appeared in this action and plaintiff has been

5   precluded from conducting discovery, the precise means of transmission cannot be ascertained.

6   At a minimum, however, plaintiff's complaint and evidence support a conclusion that defendants

7   intercepted, without authorization, a transmission of the Program and broadcast it to its patrons.

8   Plaintiff should not be prejudiced by defendants' failure to appear or defend itself in this action

9   and the court concludes, therefore, that statutory damages should be awarded under section 605.

10          After weighing the Eitel factors, the undersigned finds that the material

11   allegations of the complaint support plaintiff's claims.[2]  Plaintiff will be prejudiced if default

12   judgment is denied because plaintiff has no other recourse for recovery of the damages suffered

13   due to the defendants' failure to pay for the right to exhibit the Program.

14          In light of the entry of default against the defendants, there is no apparent

15   possibility of a dispute concerning the material facts underlying the action.  Nor is there any

16   indication that the defendants' default resulted from excusable neglect, as defendants were

17   properly served with plaintiff's pleading as well as with plaintiff's request for entry of default

18   and motion for default judgment.  Defendants have had ample notice of plaintiff's intent to

19   pursue a default judgment against them.

20          Although public policy generally favors the resolution of a case on its merits, the

21   defendants' failure to make a proper appearance and defend against plaintiff's claims has made a

22   decision on the merits impossible in this case.  Because most of the Eitel factors weigh in

23   _____

24   Ltd., v. Williams, 1 F. Supp. 2d 1481, 1484 (S.D. Ga. 1998).

25       [2]  The application for default judgment does not specifically request judgment on
     plaintiff's claim that defendants violated California Business and Professions Code §§ 17200 et
     seq., and plaintiff's memorandum in support of the application does not address this claim.
26   Accordingly, the undersigned does not address this claim.

1    plaintiff's favor, the undersigned, while recognizing the public policy favoring decisions on the

2    merits, will recommend that default judgment be entered against the defaulted defendants.

3    II.  Terms of Judgment to Be Entered

4              After determining that entry of default judgment is warranted, the court must next

5    determine the terms of the judgment.  Upon consideration of all of plaintiff's briefing, the

6    undersigned will recommend that damages be awarded but not in the amount requested.

7              By its motion for default judgment, plaintiff seeks a judgment in the total amount

8    of $111,800.00.  That sum consists of $110,000 for the violation of Title 47 and $1,800 for the

9    tort of conversion.  The undersigned recognizes that defendants were served with plaintiff's

10   motion for default judgment and were thereby placed on notice of the amount sought by plaintiff.

11   However, granting or denying default judgment is within the court's sound discretion, and one of

12   the factors the court is free to consider in exercising its discretion is the sum of money at stake.

13   See J & J Sports Productions, Inc. v. Betancourt, No. 08cv937 JLS (POR), 2009 WL 3416431, at

14   *3 (S.D. Cal. Oct. 20, 2009).

15             The affidavit of the investigator, Jose Gomez, establishes that defendants

16   broadcast the program to the bar patrons, that there were three screens in the establishment on

17   which the Program was displayed (with screen sizes of approximately 50 inches), that the

18   capacity of the bar was 100 people and that at the time of the broadcast, headcounts were taken

19   three different times showing 23, 22 and 23 patrons.  The supplemental affidavit of Thomas

20   Riley advises the court of two other actions against these defendants filed in this district which

21   allege the same violations.  Based on these other filings, it is apparent that defendants not only

22   have been on notice that pirating a commercial signal is unlawful, but have wilfully refused to

23   terminate their illegal activities.  Under these circumstances, the court finds enhanced statutory

24   damages should be awarded and that default judgment in the amount of $85,000 is appropriate.

25             In his declaration in support of the motion for default judgment, counsel indicates

26   that plaintiff also seeks the award of $1,800 in damages for the state law tort of conversion,

1   representing the amount defendants would have paid plaintiff to show the Program lawfully

2   according to the rate card for the event.  The undersigned will not recommend an award of

3   damages with respect to plaintiff's conversion claim.  The statutory damages provisions at issue

4   serve not only a deterrent function, see J & J Sports Prods. v. Orellana, No. 08-05468 CW, 2010

5   WL 1576447, at *3 (N.D. Cal. Apr. 19, 2010) (unpublished), but also a compensatory function,

6   which is evidenced by provisions that permit the award of statutory damages or actual damages

7   in a civil action.  See 47 U.S.C. § 605(e)(3)(C)(I); 47 U.S.C. § 553(c)(3)(A)(i).  Here, the

8   recommended award in the amount of $85,000 sufficiently compensates plaintiff.  See J & J

9   Sports Productions, Inc. v. Ferreyra, No. C 08-128 LKK KJM, 2008 WL 4104315, at *1 (E.D.

10  Cal. Aug. 28, 2008) ("Inasmuch as plaintiff seeks statutory damages rather than actual damages,

11  plaintiff's request for damages for conversion should be denied.").

12          Finally, although the prayer for relief in the complaint indicates that plaintiff seeks

13  an award of costs and attorney fees, the motion for default judgment does not contain any

14  argument in support of such a request.  Moreover, no evidence of costs or attorney fees incurred

15  was submitted to the court in connection with the pending motion.  Accordingly, the court will

16  not recommend an award of costs and attorney's fees.

17                              CONCLUSION

18           For the reasons set forth above, IT IS RECOMMENDED that:

19          1. Plaintiff's motion for default judgment (dkt. no. 17) against defendants Jason

20  Brown, Lawrence Brown and Jbeezy Enterprises, LLC, individually and doing business as

21  American Spirit Sports Bar, be granted;

22          2. Judgment be entered against the defendants in the sum of $85,000; and

23          3. This case be closed.

24          These findings and recommendations will be submitted to the United States

25  District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within

26  fourteen days after these findings and recommendations are filed, any party may file written

objections with the court.  A document containing objections should be titled "Objections to

Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to

file objections within the specified time may, under certain circumstances, waive the right to

appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: August 30, 2011

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

4
j&jsports-brown.def